LIBERTY MUTUAL INSURANCE COMPANY, Appellant, v AETNA CASUALTY & SURETY COMPANY et al., Respondents, et al., Defendants.

Second Department, May 31, 1991

122

## APPEARANCES OF COUNSEL

*Shapiro, Shiff, Beilly, Rosenberg & Fox (Gerald Richman* of counsel), for appellant.

*Leahy & Johnson, P. C. (Lewis I. Wolf* of counsel), for Aetna Casualty & Surety Company, respondent.

*Quirk & Bakalor, P. C. (Nicholas Goodman* of counsel), for Travelers Insurance Company, respondent.

*Barry, McTiernan & Moore (William E. Fay III* of counsel), for INA Insurance Company, respondent.

## OPINION OF THE COURT

BRACKEN, J. P.

On July 17, 1985, an automobile owned by Oxford Resources Corp. (hereinafter Oxford) and driven by Esther Dancour, collided with a bicycle at an intersection in Brooklyn. At the time of this accident, Mrs. Dancour was allegedly operating her vehicle in the course of her employment. The injured bicyclist, Catherine Cranston, was subsequently awarded a money judgment in the sum of $1,526,000 against both Oxford and Mrs. Dancour. Because Oxford's tort liability was wholly vicarious *(see,* Vehicle and Traffic Law § 388), it was granted a judgment for full indemnification over against Mrs. Dancour, the sole active tort-feasor *(see Cranston v Oxford Resources Corp.,* — AD2d — [decided herewith]). Mrs. Dancour's employer, Manny's Kiddie Shop (hereinafter Manny's) was not a party to the *Cranston* action.

In the present declaratory judgment action, the central question is whether the better part of the judgment awarded in favor of Miss Cranston should be paid by the plaintiff-

appellant Liberty Mutual Insurance Co. (hereinafter Liberty), which furnished $1,000,000 in primary automobile liability coverage to the innocent judgment creditor, Oxford, or instead by the defendant-respondent Aetna Casualty & Surety Company (hereinafter Aetna), which furnished $1,000,000 in coverage to Manny's, the employer of the individual whose negligence actually caused the accident, i.e., Mrs. Dancour. Resolution of this question is complicated by the fact that Liberty, in addition to insuring Oxford up to a limit of $1,000,000, also afforded primary insurance coverage to Mrs. Dancour; however, by virtue of the "stepdown" endorsement contained in its policy, Liberty's coverage of Mrs. Dancour was limited to the sum of only $100,000.

■ ■ Aetna argues that Liberty's "stepdown" clause is unenforceable and Liberty's policy must, therefore, be read as affording $1,000,000 in primary coverage to Mrs. Dancour. Aetna also argues that Liberty may not avail itself in any way of Oxford's right to full indemnification from Mrs. Dancour, invoking the rule that an insurance carrier may not assert a subrogation claim against its own insured. We disagree with both of these arguments.

■ ■ Among the related questions which must be resolved on appeal are (1) whether the personal excess insurance policy issued to Mrs. Dancour's husband by the defendant-respondent INA Insurance Company (hereinafter INA) must contribute toward a satisfaction of the underlying judgment, and (2) whether the defendant-respondent Travelers Insurance Company (hereinafter Travelers) must also contribute to the underlying judgment. We answer these separate questions in the negative.

## I

Four insurance carriers are involved in this action, and it is appropriate to begin with an examination of the terms of their respective policies.

First, there is the policy issued by Liberty to Oxford, the owner of the offending vehicle. This policy provided for a limit of liability coverage in the amount of $1,000,000 per loss. This policy covered "any auto used under a written rental agreement issued by [Oxford] in which [Oxford] agrees to provide the insurance". However, in such cases, Liberty's policy further stipulated, in what is referred to as a "stepdown" endorsement, that any insurance provided under Liberty's policy

"for the lessee * * * is subject to the terms, including any limit of liability * * * contained in the lease or rental agreement".

The "stepdown" endorsement is implicated in this case because the offending vehicle had in fact been leased by Oxford to Manny's in November of 1984. The lease provided for liability insurance coverage with limits in the amount of $100,000 per person and $300,000 per accident. Mrs. Dancour was allegedly working in Manny's business at the time of the accident (although Manny's was not named as a party in the underlying action). Thus, if enforced, the "stepdown" endorsement contained in Liberty's policy results in two separate levels of coverage: $1,000,000 for one insured (Oxford) and $100,000 for another insured (Mrs. Dancour).

The second policy implicated in the case is the business owners policy issued by Aetna to Manny's. This policy listed Manny's, the lessee of the offending vehicle, as a named insured, with $1,000,000 as the limit of liability. This policy included a "non-owned and hired automobile liability endorsement", which stated, in part, that "this insurance applies to bodily injury or property damage arising out of the maintenance or use of hired automobiles in [Manny's] business". The Aetna policy expressly provided that the coverage afforded under the hired automobile endorsement noted above was "excess insurance over any other valid and collectible insurance available to [Manny's]". Otherwise, the Aetna policy expressly provided that its liability coverage would be primary.

The third policy to be considered is that which was issued by Travelers to the defendant Morris Dancour, an officer of Manny's and the husband of Esther Dancour. Travelers issued a standard automobile liability policy to Mr. Dancour as coverage for his personally owned 1984 Datsun. This policy had limits of $250,000 per person and $500,000 per accident. It is alleged that this policy also furnished coverage to Mrs. Dancour, as a member of Mr. Dancour's family, for any liability she might have incurred while operating the "non-owned" vehicle. However, after receiving notice of the accident in 1987, Travelers disclaimed coverage on the basis that the vehicle involved in the collision was "leased by Manny's Kiddie Shop and available to [Mrs. Dancour's] personal use on a regular basis". Travelers later asserted a disclaimer on the basis that the offending vehicle was excluded from coverage

because it was a "non-owned car * * * being used or maintained in any other business or occupation of the insured".

The fourth policy in question is that issued by INA to Mr. Dancour. This "personal excess liability policy" covered all liability *"for personal injury or property damage* for which a *covered* person becomes legally liable", subject to several exclusions. The term "covered person" included the named insured, Mr. Dancour, as well as members of his family. This policy has a limit of liability in the sum of $2,000,000.

## II

Liberty commenced the instant action, and named the three other interested carriers (Aetna, Travelers and INA), as well as Oxford, Manny's and the Dancours, as party defendants. The plaintiff in the underlying personal injury action, Catherine Cranston, was also named as a party defendant.

Liberty alleged in its complaint that at the time of the accident the subject vehicle (identified as a 1985 Oldsmobile) was owned by Oxford, leased by Oxford to Manny's, and driven by Mrs. Dancour. The complaint stated that as a result of the accident, a personal injury action had been brought against Oxford, as owner of the offending vehicle, and Mrs. Dancour, its driver. According to Liberty's complaint, the settlement negotiations, which were then under way in the underlying personal injury action, had come to an impasse because of disputes with respect to whether, under what circumstances, and up to what limit, each carrier could be called upon to indemnify either one of the two insureds named as defendants in the underlying action. Accordingly, Liberty requested a "judgment * * * declaring the obligations, rights and responsibilities of the various insurance carrier defendants under the policies described".

The three defendant insurance companies submitted answers in which nothing of substance was conceded. Shortly after the joinder of issue, Liberty attempted to place its action on the Trial Calendar by filing a note of issue dated March 29, 1988. Aetna immediately responded by moving to strike the action from the calendar, claiming that Liberty had not complied with certain demands for discovery. This motion was heard by the Supreme Court on June 7, 1988, and the court apparently issued an oral ruling granting the motion. The court also made an oral ruling which directed certain discovery. A written order to this effect was, according to one of the

attorney's affidavits contained in the record, signed by Justice Cohen and later entered on July 18, 1988.

In the meantime, Liberty made a cross motion for summary judgment. According to the attorney for Liberty, the underlying personal injury action, which was pending when the present action was commenced, had since resulted in a verdict of $1,526,000 in favor of the plaintiff and against Oxford and Mrs. Dancour. This attorney conceded that Liberty was bound by the terms of its policy to pay $100,000 toward the satisfaction of this judgment.

Liberty's attorney asserted that the next layer of coverage to be deployed toward the satisfaction of the underlying judgment consisted of the $1,000,000 available to Manny's under Manny's policy with Aetna. Liberty's attorney asserted that Esther Dancour had been operating the subject vehicle "on behalf of Manny's" so as to be covered under the hired automobile endorsement of Aetna's policy. In support of this contention, Esther Dancour herself (who supported Liberty's cross motion) asserted in her affidavit that "[t]he accident occurred while I was employed by Manny's Kiddie Shop". The attorneys for Aetna, Travelers and INA all submitted affidavits in opposition to Liberty's cross motion.

The court, in its decision, searched the record (see, CPLR 3212 [b]) and granted summary judgment to the nonmoving insurance companies, including Aetna. The court held that Mrs. Dancour, as a permissive user of the vehicle owned by Oxford, was automatically entitled to the $1,000,000 in coverage furnished to Oxford by Liberty. The court also held, as a matter of law, that the vehicle had been furnished for Mrs. Dancour's regular use, so that it was not covered at all by Travelers. Finally, the court implicitly held that INA's excess policy was excess over Aetna's business policy.

In accordance with this decision, the Supreme Court (Huttner, J.), issued an order and judgment (one paper) dated February 16, 1989, which, *inter alia,* directed Liberty to pay $1,100,000 toward the satisfaction of the underlying judgment, and, in effect directed Aetna to pay the remainder of the judgment. This appeal by Liberty followed.

## III

The most important issue brought up on appeal is whether the Supreme Court, upon searching of the record (see, CPLR 3212 [b]), properly awarded summary judgment against

Liberty to the extent of declaring that Liberty was obligated to pay $1,100,000 toward the satisfaction of the underlying judgment. We believe that this determination is incorrect.

## A

To begin with, since the only policy issued by Liberty which has any relevance to this case contained an over-all limit of liability in the sum of $1,000,000, it was clearly erroneous to order Liberty to pay $100,000 over and above that amount. The Supreme Court apparently considered the $100,000 in coverage available to Manny's, as a lessee of one of Oxford's vehicles, as having been afforded by virtue of a separate policy, and the Supreme Court in fact referred to two separate Liberty policies in its decision. There is no basis for this interpretation of the record.

That the policy contains a lower limit of liability applicable to one specific subclass of insured (i.e., the limit of $100,000 per person applicable to lessees by virtue of the "stepdown" clause) does not operate to increase the over-all $1,000,000 limit. The terms of the "stepdown" clause itself make this clear. This endorsement provided that Liberty's liability to Oxford's lessees (and the lessees' permissive operators) would be limited in accordance with the terms of the lease "providing [Liberty's] undertaking under this policy is not enlarged or extended".

## B

▉ We also believe that the Supreme Court erred in concluding that the full limit of the Liberty policy in question, i.e., $1,000,000, should be made available to Mrs. Dancour, by virtue of her status as an employee of Manny's, the vehicle's lessee. Such a holding completely negates one of the terms of Liberty's policy, i.e., the "stepdown" endorsement. Recognizing that the Supreme Court's nullification of the "stepdown" clause can be considered correct only if that clause is contrary to New York law, Aetna's leading argument on appeal is that the "stepdown" clause is, in fact, illegal.

In support of this argument, Aetna cites Vehicle and Traffic Law § 311 (4) (a) and 11 NYCRR 60.1 (c) (2) in support of the proposition that all liability insurance policies issued to automobile owners in this State must contain a provision affording liability insurance to any person who uses the insured vehicle with the owner's consent. Also in point are two statutes not

cited by Aetna, Vehicle and Traffic Law § 388 (4) and Insurance Law § 3420 (e), which require that all automobile liability policies issued in this State contain a provision covering the named insured for liability occasioned by the negligence of any person operating or using the automobile with the permission, express or implied, of the named insured. Because these statutes and regulations do not expressly state that the liability insurance made available to the permissive user in such cases may be less than that made available to the owner, Aetna argues that the law prohibits such "two tiered" coverage. Aetna's attorney argues specifically that "[b]y virtue of the fact that there was no authorization [in statute or rule] for the reduction in the amount of coverage [provided pursuant to the 'stepdown' clause] the endorsements relied upon by Liberty Mutual are thus not authorized".

This tautological statement is indubitably true: statutory law does not explicitly authorize the type of two-tiered coverage afforded by Liberty's policy. What is incorrect, however, is the implication that any insurance policy provision not specifically authorized by statute or rule is necessarily illegal. We believe that the converse is true: insurance policies, like all contracts, should be enforced according to their terms unless they are prohibited by public policy, statute or rule (see generally, Kern v Hancock Mut. Life Ins. Co., 8 AD2d 256, 260, affd 8 NY2d 833; Whiteside v North Am. Acc. Ins. Co., 200 NY 320; 68 NY Jur 2d, Insurance, § 552). Aetna cites no rule or statute which could be construed as prohibiting Liberty from contracting with its two insureds, Oxford (the lessor) and Manny's (the lessee), to provide insurance coverage to each, but subject to different limits.

Several courts have recognized the validity of "two tiered" insurance coverage of the type provided by Liberty in the present case. In Guaranty Natl. Ins. Co. v Kemper Fin. Servs. (667 F Supp 714, affd 877 F2d 64), a negligent driver of a leased vehicle had caused injuries to third persons while operating the vehicle in the course of his employment. The insurer for the owner-lessor of the vehicle claimed that its duty to indemnify the negligent driver (and his employer, the lessee of the vehicle) was limited by the terms of its policy to $25,000, even though the amount of coverage afforded to the owner-lessor of the vehicle was much higher, i.e., $1,000,000. The business insurer of the lessee of the vehicle argued that the law required that the coverage furnished to the permissive user of a vehicle be coextensive with the amount of coverage

afforded to the vehicle owner. The United States District Court for the District of Montana upheld the "two tiered" coverage afforded by the owner-lessor's insurer, stating that there was no "cogent argument * * * which suggests that the owner of a vehicle should be precluded from insuring itself against liability at a higher limit than the limit it provides for a permissive user, such as a [lessee]" *(Guaranty Natl. Ins. Co. v Kemper Fin. Servs.,* 667 F Supp 714, 716, *affd* 877 F2d 64, *supra).*

In *General Acc. Group of Ins. Co. v Liberty Mut. Ins. Co.* (191 NJ Super 530, 468 A2d 430), the court upheld a two-tiered system of coverage similar to that under review in the present case. The court stated, "[w]e see no reason why [lessors] cannot insure themselves against liability at higher limits than the limits provided for their lessees and persons using the vehicles with the permission of the lessees, so long as the minimum limits of the law are satisfied" *(General Acc. Group of Ins. Co. v Liberty Mut. Ins. Co., supra,* 191 NJ Super, at 536, 468 A2d, at 433). This holding has been reaffirmed *(see, Rao v Universal Underwriters Ins. Co.,* 228 NJ Super 396, 549 A2d 1259, 1262; *see also, Rocky Mountain Fire & Cas. Co. v Allstate Ins. Co.,* 107 Ariz 227, 485 P2d 552; *Universal Underwriters Ins. Co. v Metropolitan Prop. & Life Ins. Co.,* 298 SC 404, 380 SE2d 858; *State Farm Mut. Auto. Ins. Co. v Mastbaum,* 748 P2d 1042 [Utah]; *Guaranty Natl. Ins. Co. v Kemper Fin. Servs., supra).* Those cases which hold to the contrary do so on the basis of statutory law which is markedly different from the law of this State. For example, in *Smith v National Indem. Co.* (57 Wis 2d 706, 205 NW2d 365), the court interpreted a Wisconsin statute which required that the indemnity offered to a named insured be extended to all permissive users *(see,* Wis Stat former § 204.30 [3]). Similarly, in *Metz v Universal Underwriters Ins. Co.* (10 Cal 3d 45, 513 P2d 922), the court interpreted a California statute which required that all automobile policies provide coverage to permissive users "to the same extent that coverage is afforded such named insured" (Cal Ins Code former § 11580.1 [d]; *see also,* Cal Vehicle Code § 16451).

New York simply has no analogous statute. The rule noted above requires only that all automobile insurance policies include a provision defining the named insured so as to include permissive users *(see,* 11 NYCRR 60.1 [c] [2]). The statutes noted above, insofar as relevant, require no more. The laws noted above cannot be construed as prohibiting an in-

sured owner from contracting with a carrier so as to secure more insurance for himself than for his or her permissive drivers.

We, therefore, conclude that the "stepdown" clause in Liberty's policy is valid.

## C

■ Because the "stepdown" clause is valid, we conclude that only $100,000 in coverage is available to Mrs. Dancour pursuant to Liberty's policy with Oxford. The question now becomes whether the next "layer" of insurance to be applied toward the underlying judgment should derive from the $1,000,000 in coverage furnished to Oxford by Liberty, or from the $1,000,000 in coverage afforded to Mrs. Dancour by Aetna. Since Mrs. Dancour claims to have been operating the vehicle in the course of her employment, it is possible that Aetna's policy would furnish coverage to her up to a limit of $1,000,000 after the $100,000 is made available to her (through Manny's) under Liberty's policy.

The Supreme Court held that there was no question as to whether Mrs. Dancour was, in fact, operating the vehicle in question in the course of her employment. It, therefore, concluded that the business policy furnished by Aetna to Mrs. Dancour's employer did furnish coverage to her in the amount of $1,000,000. However, the court went on to conclude that the $1,000,000 in coverage furnished by Aetna to Mrs. Dancour was to be applied after the $1,000,000 (or, as incorrectly determined by the court, $1,100,000) in coverage furnished by Liberty to Oxford. In so doing, the court rejected Liberty's argument that such a holding would effectively nullify Oxford's right to full indemnification from Mrs. Dancour.

There is no basis in law, or in the terms of the relevant insurance policies, for the Supreme Court's determination that Aetna's obligation to pay the underlying judgment (up to its limit of $1,000,000) comes into play only after Liberty's $1,000,000 policy with Oxford has been exhausted. Pursuant to Aetna's "non-owned and hired automobile liability endorsement", its obligation to pay accrues after the exhaustion of any "other valid and collectible insurance *available to [Manny's]*". As discussed above, the $1,000,000 in coverage furnished by Liberty to Oxford can in no sense be considered "available to" Manny's; on the contrary, Liberty's "stepdown" clause expressly provides that only $100,000 would be available to Manny's.

■ It is true that, vis-à-vis the plaintiff in the underlying action, Liberty is obligated to pay the sum of $1,000,000 on behalf of Oxford, Mrs. Dancour's vicariously liable codefendant. However, when a judgment debtor, whose tort liability is purely derivative, has the right to full indemnification from another judgment debtor, whose tort liability is primary, and where both judgment debtors are insured under policies which cover the same risk, the courts generally recognize that the insurance furnished to the passive tort-feasor should be considered excess to that furnished to the active tort-feasor *(see, e.g., Utica Mut. Ins. Co. v Preferred Mut. Ins. Co.,* 149 Misc 2d 723 [Sup Ct., Schenectady County, Jan. 30, 1991]; *Allstate Ins. Co. v Aetna Cas. & Sur. Co.,* 326 F2d 871, 877; *Fireman's Fund Ins. Co. v Canal Ins. Co.,* 411 F2d 265; *Pacific Employers Ins. Co. v Hartford Acc. & Indem. Co.,* 228 F2d 365, *cert denied* 352 US 826; *Travelers Ins. Co. v Employers' Liab. Assur. Corp.,* 242 F Supp 627, *affd* 367 F2d 205; *Maryland Cas. Co. v New Jersey Mfrs. [Cas.] Ins. Co.,* 48 NJ Super 314, 137 A2d 577, *affd* 28 NJ 17, 145 A2d 15; *Dairyland Ins. Co. v Concrete Prods. Co.,* 203 NW2d 558 [Iowa]; *Chicago Ins. Co. v Soucy,* 473 So 2d 683 [Fla], *approved in part, quashed in part* 479 So 2d 114 [Fla]; *United States Fire Ins. Co. v National Union Fire Ins. Co.,* 107 Cal App 3d 456, 165 Cal Rptr 726; 16 Couch, Insurance 2d § 62:65 [revd ed]). In accordance with this rule, Oxford's right to indemnification from Mrs. Dancour translates into Liberty's right to have its policy amount above $100,000 considered excess to Aetna's.

■ The Supreme Court was of the view that by arguing that it had the right, in accordance with this rule, to avail itself of Oxford's entitlement to full indemnification from Mrs. Dancour, Liberty was "in a sense, being subrogated to the rights of its insured". The court then applied the general rule that an insurer may not assert a subrogation claim against its own insured, and concluded that since Liberty furnished at least $100,000 in coverage to Mrs. Dancour, and since Mrs. Dancour was thus Liberty's insured, Liberty could not avail itself of Oxford's right to be indemnified by her. On appeal, Aetna contends that this analysis is correct. We disagree.

The Court of Appeals has sanctioned the general rule that an insurer has no right of subrogation against its own insured, even when any judgment recovered in such a subrogation action would be covered under the policy issued by a different insurer *(see, Pennsylvania Gen. Ins. Co. v Austin Powder Co.,* 68 NY2d 465; *see also, Chrysler Leasing Corp. v Public Adm'r,*

*N.Y. County,* 85 AD2d 410; *Home Ins. Co. v Pinski Bros.,* 160 Mont 219, 500 P2d 945). The *Pennsylvania Gen.* case *(supra)* coincidentally involved the same protagonists as those now before this court. Liberty had issued both a primary and an excess automobile liability policy to the owner of a certain truck and Aetna had issued two policies, including one which covered "nonowned business vehicles" *(Pennsylvania Gen. Ins. Co. v Austin Powder Co., supra,* at 468), to the business entity which had rented the subject truck from Liberty's insured. In an earlier decision (not under review by the Court of Appeals), the Appellate Division had held that the lessee of the vehicle (Aetna's insured) was also an additional insured under Liberty's policy with the owner *(see, Aetna Cas. & Sur. Co. v Liberty Mut. Ins. Co.,* 91 AD2d 317). An accident occurred while the truck was being operated by an employee of Aetna's insured, and this accident resulted in several claims to recover for property damage. Liberty settled one of the property damage claims for $2,252, but did so only on behalf of its principal insured, the owner. Liberty then brought a subrogation claim (in the owner's name) directly against the vehicle lessee on the basis of an indemnification clause contained in the vehicle lease.

The Court of Appeals held that Liberty's subrogation claim had to be dismissed. To permit Liberty to recoup the $2,252 which it had paid to the insured owner in a subrogation action brought against the lessee, who was an additional insured of Liberty, would, the court noted, represent "an attempt by an insurer to recover from its other insured * * * for the very loss for which [its other insured] was supposed to be covered" *(Pennsylvania Gen. Ins. Co. v Austin Powder Co., supra,* at 470-471). The court declared that this result would be "unseemly * * * [and] not * * * consistent with the equitable principles that govern subrogation claims" *(Pennsylvania Gen. Ins. Co. v Austin Powder Co., supra,* at 471)

The present case is distinguishable for one fundamental reason. In supporting its request for a declaratory judgment in the present case, Liberty has postulated the existence of a right to be subrogated to the rights of its insured, Oxford, so as to be able to assert a future claim for indemnification against Mrs. Dancour. This potential future claim would accrue, technically, only if Liberty (on behalf of Oxford) were actually compelled to pay the underlying judgment up to its $1,000,000 limit. However, none of this alters the fact that the present action is *not* one in which a claim for indemnification

is in fact being asserted, either by Oxford as a subrogor, or by Liberty as a subrogee. This is not, in short, a subrogation case; rather, it is an action for declaratory judgment. In a similar context, the Court of Appeals has regarded this distinction as critical *(see, Liberty Mut. Ins. Co. v Prudential Prop. & Cas. Ins. Co.,* 59 NY2d 1021, 1023, *affg* 93 AD2d 814).

Since there is no possibility that the present action for declaratory relief could result in a monetary award in favor of an insurance company (Liberty) against its own insured (Mrs. Dancour, or Manny's), we do not believe that the rule announced in the *Pennsylvania Gen.* case (68 NY2d 465, *supra)* applies *(see also, Hertz Corp. v Allstate Ins. Co.,* 128 AD2d 375).

## D

In accordance with the foregoing, we conclude that, if Mrs. Dancour were in fact operating the vehicle in question in the course of her employment, then Aetna would be obligated to pay $1,000,000 toward satisfaction of the underlying judgment, pursuant to its policy with Manny's, over and above the $100,000 payable by Liberty.

With respect to the relief to be granted upon appeal, Liberty argues that this court should, upon vacating or modifying the declaratory relief granted by the Supreme Court, grant different declaratory relief, including, specifically, a declaration that Aetna is required to contribute $1,000,000 toward the satisfaction of the underlying judgment. As noted above, this relief would be appropriate at this stage only if it can be said, as a matter of law, that Mrs. Dancour, was, in fact, operating her vehicle in connection with her employment with Manny's, Aetna's insured. However, the record on appeal is not sufficiently clear so as to permit resolution of this factual question.

Mrs. Dancour averred, in her affidavit in support of Liberty's cross motion, that "[t]he accident occurred while I was employed by Manny's Kiddie Shop". However, this statement does not necessarily mean that at the moment the accident occurred Mrs. Dancour was actually operating the vehicle in the course of that employment. Mrs. Dancour also averred that the accident occurred "immediately" after she had left the Kings Plaza Shopping Center, where she had been doing "comparison shopping * * * for [her] work with Manny's". However, the term "immediately" is ambiguous, and it is thus

unclear exactly how much time had elapsed between the completion of her allegedly work-related "comparison shopping" and the accident. Mrs. Dancour also failed to reveal whether her employment with Manny's was the exclusive, or even the principal, motivation for her trip to the shopping center, and she likewise failed to reveal what her destination was after that trip had been completed.

There is also evidence in the record, specifically an affidavit submitted by an investigator who interviewed Mrs. Dancour, from which it can be inferred that the vehicle in question was not generally used in the course of Manny's business, but instead "served as a second family car". As noted above, Mrs. Dancour is not only allegedly an employee of Manny's; she is also the wife of Manny's principal officer, Morris Dancour. Mrs. Dancour submitted nothing which would tend to corroborate her self-serving claim to have been acting in the course of her employment with Manny's at the time that the accident occurred. Nor does she specifically deny the investigator's claim that she considered the vehicle a "second family car".

Under the circumstances outlined above, we believe that, while resolution of this issue by way of summary judgment might be warranted after the completion of discovery, it is not warranted now. Counsel should be given an opportunity to examine Mrs. Dancour with respect to her conclusory assertion that the accident occurred "immediately" after her completion of a task which she had allegedly performed in the course of her employment.

In general, summary judgment should not be granted where the facts which govern the resolution of a material issue are within the exclusive knowledge of the proponent of the motion, where the opponent of the motion cannot independently discover such facts, and where the opponent of the motion has acted diligently in attempting to obtain pretrial discovery (see, CPLR 3212 [f]; *Jered Contr. Corp. v New York City Tr. Auth.*, 22 NY2d 187, 194; *Five Towns Coll. v Citibank*, 108 AD2d 420, 428; *People v United Funding*, 106 AD2d 846, 847; *Nordlicht v Norton Simon, Inc.*, 70 AD2d 511; *White v First Natl. Bank*, 22 AD2d 973, 974; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3212.18). " '[S]ummary judgment is not justified where there are likely to be defenses that depend upon knowledge in the possession of the party moving for judgment, which might well be disclosed by cross-examination or examination before trial' " *(Jered Contr. Corp. v New York City Tr. Auth., supra,*

at 194, quoting from *Proctor & Gamble Distrib. Co. v Lawrence Am. Field Warehousing Corp.,* 15 NY2d 344, 362).

In the present case, Aetna's attorneys served a notice to take the examination before trial of several parties, including Mr. and Mrs. Dancour, and this notice antedated the note of issue filed by Liberty. The Supreme Court, in fact, issued an order which was later apparently overlooked, directing the examination before trial of both Mr. and Mrs. Dancour. Considering that it is Mr. and Mrs. Dancour who have the exclusive knowledge as to whether at the time of the accident, Mrs. Dancour was operating the vehicle as an employee of Manny's, we believe that a decision on any motion for summary judgment should be deferred until completion of those depositions.

### E

For the foregoing reasons, we conclude that the record, as it has been developed to this point, does not furnish an adequate basis upon which to declare, as a matter of law, that Aetna is liable to pay the $1,000,000 limit of its policy toward satisfaction of the underlying judgment. The parties essentially concede that Aetna's policy is applicable only if Mrs. Dancour was operating the vehicle in the course of her employment. Before accepting her claim that she was, in fact, doing so, adverse counsel should be allowed to complete discovery.

### IV

■ Aetna also argues that if it is obligated to pay toward satisfaction of the underlying judgment at all, then its policy should be considered an "excess" policy, like INA's, and the two policies should contribute ratably toward the satisfaction of the underlying judgment. This argument is without merit.

Aetna's basic business owners' policy is a "primary" one, except where stated otherwise. As noted above, the endorsement which covers "non-owned and hired automobile liability" contains an "other insurance" provision which states: "The insurance afforded by this endorsement is excess insurance over any other valid and collectible insurance available to you [i.e., the insured, Manny's]".

INA's personal excess liability policy, issued to Mrs. Dancour's husband, contains an "other insurance" provision which states that "this policy provides insurance in excess of and *will not contribute with other collectible insurance* which

covers an occurrence covered by this policy" (emphasis added). The Aetna policy under review contains no similar clause.

In *State Farm Fire & Cas. Co. v LiMauro* (65 NY2d 369), the Court of Appeals held that an insurance policy which, like Aetna's, purports to be excess, but which does not expressly negate the possibility of pro rata contribution with other similar excess policies, must be fully exhausted before coverage becomes available under a policy which, like INA's, expressly negates the possibility of contribution. The *LiMauro* case cannot be distinguished in any significant way from the present case, and dictates the conclusion that INA has no obligation to contribute toward payment of the underlying judgment until the limits of Aetna's policy have been paid in full.

In accordance with the foregoing, if it is ultimately found that Mrs. Dancour was operating her vehicle in connection with her employment, then the next "layer" of coverage derives from Aetna's $1,000,000 policy with Manny's.

## V

█ INA argues on appeal that the Supreme Court properly declared that it has no obligation to pay toward the satisfaction of the underlying judgment, and requests an affirmance of this aspect of the court's judgment. This argument is based on the premise that its policy is excess not only to the $1,000,000 policy available to Mrs. Dancour (via Manny's) from Aetna, but also to the $1,000,000 policy available to Oxford from Liberty. Since the underlying judgment can obviously be satisfied by application of these two primary policies, INA argues that it faces no possible exposure.

There are two flaws in this argument, one factual and one legal. The factual flaw is that, as we noted above, we do not believe that the evidence submitted to the court warrants a conclusion that, as a matter of law, Mrs. Dancour was driving her vehicle in connection with her employment; this is a question of fact with respect to which there must be further discovery. Given the possibility that it might be discovered that Mrs. Dancour was not driving in connection with her employment, Aetna's policy may not be applicable.

The legal flaw in this argument is that it overlooks the rule, noted above, pursuant to which the insurer of an active tort-feasor must, in general, indemnify the insurer of a passive tort-feasor when the latter is held vicariously liable for dam-

ages caused by the negligence of the former *(see, e.g., Pacific Employers Ins. Co. v Hartford Acc. & Indem. Co.,* 228 F2d 365, *supra).* This rule leads to the conclusion that the excess automobile liability carrier of an active tort-feasor (a negligent driver) is obligated to pay toward the satisfaction of an underlying judgment before the primary automobile liability carrier of a nonnegligent passive tort-feasor will be required to contribute *(see, Hartford Acc. & Indem. Co. v Kellman,* 375 So 2d 26 [Fla]).

We are persuaded that this is the correct analysis, and an example will help to illustrate why this is so. If Aetna were to pay its $1,000,000 policy on behalf of Mrs. Dancour, over and above the $100,000 which Liberty is bound to pay on her behalf, and if Liberty then were to pay an additional $426,000 pursuant to its policy with Oxford in order to completely satisfy the underlying judgment, then Liberty would have the theoretical right, as Oxford's subrogee, to seek recovery of that $426,000 from Mrs. Dancour. Aetna's policy having been completely exhausted, INA would then be called upon to insure Mrs. Dancour for this liability. While Liberty might never be able to obtain monetary relief directly from Mrs. Dancour based on the existence of this right of indemnification, pursuant to the rule of the *Pennsylvania Gen.* case *(supra),* this should not preclude Liberty from relying on the existence of this right to indemnification in order to argue in this declaratory judgment action, that, as between several carriers insuring the same risk, its policy with the innocent judgment debtor, whose liability is purely derivative, should be considered excess to both the primary and the excess policies of the guilty judgment debtor, whose liability is based in active negligence.

For these reasons, INA's policy, although excess to Aetna's, cannot be considered excess to Liberty's policy with Oxford. Assuming that Mrs. Dancour was driving in connection with her employment, INA's policy would provide the third "layer" of insurance after the exhaustion of Aetna's policy.

## VI

■ We conclude that respondent Travelers has no duty to pay any amount toward satisfaction of the underlying judgment. The evidence in the record establishes conclusively that the vehicle in question was available for the regular use of both Mr. and Mrs. Dancour. This much was essentially admit-

ted by Mrs. Dancour herself in her statement to Travelers' investigator. There is no issue of fact as to whether the subject vehicle was regularly available for Mrs. Dancour's use; the only issue, as noted above, concerns whether her use of the vehicle at the time of this accident was in the course of her alleged employment.

Travelers' policy covered Mr. Dancour's 1984 Datsun. It also provided liability insurance for "non-owned" cars, this term being defined so as to exclude any vehicle "furnished or available for the regular use of [the named insured, Mr. Dancour] or a relative". This clause was meant to provide liability coverage for the insured's "occasional or infrequent use of a vehicle not owned by him" *(Federal Ins. Co. v Allstate Ins. Co.,* 111 AD2d 146, 147). It was not meant to extend coverage to what Mrs. Dancour characterized as a second family car *(see also, Egle v United Servs. Auto. Assn.,* 158 AD2d 661; *Liberty Mut. Ins. Co. v Sentry Ins.,* 130 AD2d 629, *rearg granted in part, denied in part* 135 AD2d 508).

█ We also note that summary judgment in Travelers' favor may not be avoided on the basis that there was a delay in Travelers' service of a notice of disclaimer on this ground. Since Traveler's policy was never intended to provide coverage to the vehicle involved in the underlying accident, coverage cannot be created on account of Travelers' late service of a notice of disclaimer *(see, American Home Assur. Co. v Aprigliano,* 161 AD2d 357; *Schmidt v Prudential Ins. Co.,* 143 AD2d 997; *United Servs. Auto. Assn. v Meier,* 89 AD2d 998).

Accordingly, the Supreme Court correctly determined that Travelers' policy provides no liability coverage to the two judgment creditors in the underlying action, and properly granted summary judgment in Travelers' favor *(see,* CPLR 3212 [b]).

## VII

In accordance with the foregoing, the order and judgment appealed from is modified, on the law, by deleting the second, third, fourth, fifth and seventh decretal paragraphs thereof, and substituting therefor provisions (1) granting the cross motion to the extent of declaring that the plaintiff must pay no more than $100,000 toward the satisfaction of the underlying judgment, and, (2) upon searching the record, declaring that INA Insurance Company need not contribute to the underlying judgment until all other insurance available to

Esther Dancour has been exhausted; as so modified, the order and judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for additional discovery and further proceedings to determine whether coverage for the underlying judgment, in addition to the first $100,000, should derive from the policies of Aetna Casualty & Surety Company and INA Insurance Company, which allegedly cover the active tort-feasor, or instead from the plaintiff's policy which covers the passive tort-feasor, Oxford Resources Corporation.

BROWN, O'BRIEN and RITTER, JJ., concur.

Ordered that the order and judgment is modified, on the law, by deleting the second, third, fourth, fifth and seventh decretal paragraphs thereof, and substituting therefor provisions (1) granting the cross motion to the extent of declaring that the plaintiff must pay no more than $100,000 toward the satisfaction of the underlying judgment, and, (2) upon searching the record, declaring that INA Insurance Company need not contribute to the underlying judgment until all other insurance available to Esther Dancour has been exhausted; as so modified, the order and judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for additional discovery and further proceedings to determine whether coverage for the underlying judgment in addition to the first $100,000, should derive from the policies of Aetna Casualty & Surety Company and INA Insurance Company, which allegedly cover the active tort-feasor, or instead from the plaintiff's policy which covers the passive tort-feasor, Oxford Resources Corporation.