[691 NYS2d 479]

Robin Alinkofsky et al., Respondents, v Country-Wide Insurance Company, Appellant.

First Department, June, 10, 1999

· APPEARANCES OF COUNSEL

*Jade M. Priest* of counsel (*Frank J. Lombardo* on the brief; *Beck & Iannuzzi, P. C.,* attorneys), for respondents.

*Thomas Torto* of counsel (*Cheven Keely & Hatzis,* attorneys), for appellant.

## OPINION OF THE COURT

Tom, J. P.

The individual plaintiff, Robin Alinkofsky, was insured under her parents' vehicle liability policy, issued by present defendant insurer Country-Wide. She leased a car from a car rental agency, pursuant to which she elected coverage for third-party injuries to the extent of the $10,000 statutory minimum requirement, but, as per the rental agreement, agreed to hold the lessor harmless from liability in excess of that coverage. This coverage was stated to be primary with respect to any other coverage. However, the car rental company was protected by its own coverage in the amount of $1,000,000, with the lessee's coverage limited as indicated. The step-down endorsement in the policy basically limited the lessee's coverage to that specified in the rental agreement, i.e., $10,000. However, these two different coverages were provided in the same policy rather than in two separate policies. The lessor's insurance carrier is present coplaintiff, insurer Liberty Mutual. As such, Liberty covered both the lessor and the lessee under the same policy.

While driving that vehicle, in which Ann Marie Parisi was a passenger, Alinkofsky was involved in a collision with another vehicle. Parisi sued the lessor as well as the individual coplaintiff as driver-lessee. Relying on the Second Department's ruling in *Liberty Mut. Ins. Co. v Aetna Cas. & Sur. Co. (Liberty I)* (168 AD2d 121), Liberty disclaimed coverage for Alinkofsky as to the $1,000,000 limit, contending that it was available only to the lessor, but not collectible by the lessee. The personal injury litigation, though, triggered Alinkofsky's coverage under her parents' policy with Country-Wide. Under the terms of that policy, coverage would be extended as to vehicles the covered party did not own only as excess over other collectible insurance.

Liberty selected outside counsel to represent both Alinkofsky and the lessor as defendants in the personal injury action. Subsequently, Liberty and Alinkofsky, again represented by the same outside counsel, commenced the instant declaratory

judgment action against Country-Wide, seeking a declaration that Country-Wide must indemnify Alinkofsky for all losses in excess of her $10,000 Liberty policy. However, there is no indication that counsel, on behalf of Alinkofsky, made any demand on Liberty to provide her with the $1,000,000 coverage in effect for the lessor car rental. Insofar as the same law firm also represented Liberty, on both of the same matters, the result is unsurprising. As a consequence, the issue presented was whether Country-Wide was responsible for a second layer of coverage for losses in excess of $10,000, rather than, as a final layer of coverage, for losses in excess of $1,000,000.

The declaratory judgment court, interpreting the Liberty coverage to consist of two separate policies, declared that the Country-Wide policy provided a second layer of coverage, after exhaustion of Alinkofsky's Liberty coverage for $10,000, but before triggering the $1,000,000 Liberty coverage running to the lessor, which the court declared to be the final layer of coverage. Subsequently, the personal injury action settled for $53,000. After the $10,000 Liberty coverage of Alinkofsky was exhausted, Liberty and Country-Wide divided between them payment of the remaining $43,000 to Parisi, without prejudice to renewal or reargument of the declaratory judgment order determining the layers of coverage.

Country-Wide subsequently so moved on the basis that the court had ruled on a mistaken factual predicate, that Liberty had provided two separate policies rather than a single policy covering both Alinkofsky and the lessor. Country-Wide also claimed that, as a matter of law, the step-down endorsement in the policy, if applied to limit coverage for Alinkofsky to the statutory minimum set forth in the rental agreement, violated the antisubrogation rule, in that Liberty thereby sought to subrogate against Alinkofsky, its own insured, for a claim arising from the same risk for which Liberty insured her. Country-Wide now sought a declaration that Liberty was a prime insurer for Alinkofsky as to the entire loss, subsumed within the $1,000,000 policy limits, with Country-Wide providing only a final layer of coverage which under these facts would not be triggered, so that Country-Wide was entitled to reimbursement from Liberty for payments made to Parisi. Counsel mutually representing Alinkofsky and Liberty responded that Alinkofsky, by declining to purchase additional coverage, was not entitled to the additional policy limits provided to the lessor. Counsel further argued that the lessor, purportedly only a passive tortfeasor, was entitled to indemnification from Alinkofsky, as the active tortfeasor.

Country-Wide's motion was denied. However, since this result violates the antisubrogation rule, we reverse.

An insurer has a right of subrogation, by which it occupies the position of its insured to seek repayment from a third party whose wrongdoing caused the loss to the insured that the insurer is contractually obligated to cover (*Jefferson Ins. Co. v Travelers Indem. Co.*, 92 NY2d 363, 373). The principle of subrogation is liberally applied toward the goal of protecting the beneficiaries of the doctrine, but has also been limited in furtherance of public policy objectives (*Jefferson Ins. Co. v Travelers Indem. Co.*, *supra*). New York, thus, has also recognized an antisubrogation doctrine that has had increasing resonance in recent jurisprudence. The doctrine derives from the proposition that an insurer of two parties should be precluded from seeking to recover from its insured for the very loss for which the insured is supposed to be covered (*Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, 68 NY2d 465, 470-471; *Hailey v New York State Elec. & Gas Corp.*, 214 AD2d 986).

The antisubrogation rule addresses the conflict of interest inherent in situations where "the insurer's own interests [are] at variance with those of its insured" (*Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, *supra*, at 472). The antisubrogation rule "is premised, in part, on the avoidance of a conflict of interest that would undercut the insurer's incentive to provide an insured with a vigorous defense. Additionally, enforcement of the rule seeks to prohibit an insurer from passing its loss to its own insured" (*Jefferson Ins. Co. v Travelers Indem. Co.*, *supra*, at 373), significant public policy goals that we have consistently enforced (*Federal Ins. Co. v Ryder Truck Rental*, 189 AD2d 582, *affd* 82 NY2d 909; *see, North Star Reins. Corp. v Continental Ins. Co.*, 82 NY2d 281, 295). Hence, we have emphasized the abuse that occurs when common counsel fashions the litigation to favor one of the insureds at the expense of the other (*Travelers Indem. Co. v LLJV Dev. Corp.*, 227 AD2d 151, 157, citing *North Star Reins. Corp. v Continental Ins. Co.*, *supra*, at 296), possibly neglecting the defense of one in a manner that shifts the loss to other insurers (*National Cas. Co. v State Ins. Fund*, 227 AD2d 115, *lv denied* 88 NY2d 813).

In the present case, the insurer, acting through common counsel, failed to satisfy all of its duties to each of its insured (*cf., National Union Fire Ins. Co. v Hartford Ins. Co.*, 248 AD2d 78, *lv granted* 255 AD2d 1018) prior to triggering its insured's

own excess coverage. Notably, common counsel here failed to even make a demand on Liberty on Alinkofsky's behalf for the coverage extended to the lessor. Liberty created the situation where the same attorney represented Alinkofsky as well as the car rental agency, which at some point had antagonistic interests, yet counsel's greatest loyalty was to the carrier. Counsel's conduct evinced a lesser loyalty to Alinkofsky. One may surmise that independent counsel representing Alinkofsky might have approached her case differently. Moreover, by characterizing Alinkofsky as the actively negligent tortfeasor, and the coinsured lessor as only passively negligent, Liberty's hired counsel effectively abdicated the investigative responsibility to zealously explore another tortfeasor's (i.e., the lessor's) potential negligence. These are the very concerns that underpin application of the antisubrogation rule articulated in *Pennsylvania Gen. Ins. Co. (supra)*, expanded in *North Star (supra)* and recently reiterated in *Jefferson (supra)*.

We have treated the antisubrogation rule as fundamental and have rejected exceptions in a variety of circumstances (*see, e.g., Jones Lang Wootton USA v LeBoeuf, Lamb, Greene & MacRae*, 243 AD2d 168, 180-182, *lv dismissed* 92 NY2d 962 [funding agreement was attempt by insurer to accomplish indirectly that which was prohibited directly; insurer manipulated litigation to minimize exposure]; *Travelers Indem. Co. v LLJV Dev. Corp., supra*, at 159; *National Cas. Co. v State Ins. Fund, supra*, at 116-118). The defense is raised that Liberty is not actually seeking indemnification from its insured, Alinkofsky, for the loss that exceeds the $10,000 limit of her coverage under the policy, so that an exception to the antisubrogation rule is presented. That misses the point. Whether or not Liberty actually expects indemnification from its insured on behalf of another insured for an event arising from the same risk is not dispositive; the conflict exists the moment that the competing coverages are triggered (*National Cas. Co. v State Ins. Fund, supra*). Liberty's argument would be stronger if the policy in question contained a provision that Liberty waived its right to seek contribution, indemnification or subrogation from its insureds (*cf., Travelers Indem. Co. v LLJV Dev. Corp., supra*, at 158) but, manifestly, that is not the case here.

Liberty additionally argues that insofar as Alinkofsky is a coplaintiff with Liberty in the declaratory judgment action, there is no subrogation, per se, with regard to the coinsured lessor. However, joinder, for Liberty, is only a means to pass the loss to her excess insurer, a stratagem that should not be available to side-step the rule.

*Liberty I (supra)*, originally relied on by Liberty to give effect to its step-down endorsement and to limit the lessee's collectible proceeds to the insurance provided directly to her, has since been revisited by the Second Department in *Liberty II* (*Liberty Mut. Ins. Co. v Aetna Cas & Sur. Co.*, 235 AD2d 523, *lv denied* 89 NY2d 817). *Liberty II* specifically addressed the priority of various insurance policies issued to the defendants in an underlying personal injury action in which a policy's step-down endorsement was relied on by the primary insurer to insert another carrier's personal excess liability policy between a primary layer of coverage for the lessee and the coverage collectible to the lessor. *Liberty II* applied the antisubrogation rule to preclude Liberty in that case from seeking, through subrogation of the rights of one of its insureds, indemnification from the insured driver. Aside from implicitly invalidating *Liberty I*, the Second Department reaffirmed the applicability of the antisubrogation rule in such conflict situations, a principle again given force the following year in *Jefferson Ins. Co. v Travelers Indem. Co.* (*supra*). The same principles apply to this case.

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered on or about December 2, 1997, declaring that insurance offered by defendant insurer is the second layer of insurance in the underlying litigation and that the insurance extended by plaintiff insurer to a nonparty vehicle owner is the third layer, should be reversed, on the law, without costs, and defendant insurer's motion for a declaration that it provided the last layer of insurance for which it is responsible only after plaintiff insurer's policy limits have been exhausted by payment, granted. Order of the same court and Justice, entered September 8, 1998, denying defendant's motion for renewal, should be dismissed, without costs, as academic.

MAZZARELLI, ANDRIAS and SAXE, JJ., concur.

Order, Supreme Court, New York County, entered on or about December 2, 1997, reversed, on the law, without costs, and defendant's motion for a declaration that it provided the last layer of insurance for which it is responsible only after plaintiff insurer's policy limits have been exhausted by payment granted. Order, same court, entered September 8, 1998, dismissed, without costs, as academic.