OPINION OF THE COURT
 

 Bellacosa, J.
 

 This appeal requires our Court to determine whether the
 
 *634
 
 statutory meaning of the word “commanded” is impermissibly vague under the Due Process Clause of the 14th Amendment of the United States Constitution. The issue arises in the context of the accomplice-liability aggravating factor which can elevate a murder to first degree rank (Penal Law § 125.27).
 

 The word “command” has a commonly accepted meaning, and we conclude that it survives the standard due process constitutional attack. Thus, we affirm the order of the Appellate Division, holding that the pertinent murder count against defendant should proceed to trial.
 

 This case evolves out of the People’s theory that defendant Couser, from his jail cell in Rochester, “commanded” the execution-style murder of a material witness in Syracuse. James Stanback was also charged in the same indictment as defendant, as the man purportedly “commanded” by defendant Couser to perform “the hit” on the material witness. The “hit men” failed in their attempt to locate and murder the witness, but they later killed one of his family and shot others during their encounter.
 

 The Grand Jury evidence included testimony from a third individual involved in the murders. This witness testified to hanging out with a group in Rochester called the “G-Boys” and to a relationship with Couser. According to the Grand Jury witness, Stanback was also a member of this group. Stanback referred to defendant as “his man.”
 

 The witness who was associated with the “G-Boys” told the Grand Jury that, in an effort to ingratiate himself to Stanback, he provided transportation to Syracuse and, on the way, learned that the group he was driving was going to “silence” the material witness to keep him from testifying against defendant. Stanback had informed this associate that “he was going to have to go out of town to take care of something for [defendant].” However, once in Syracuse, Stanback could not determine whether he had found the right man, and they left the city. Defendant evidently called on a cellular phone while Stanback and the group were on their way back to Rochester; Stanback discussed the intended victim’s identity with Couser.
 

 The gang associate witness also testified before the Grand Jury that he participated in the shootings of the victims on a second trip to Syracuse. He said that he knew before he went to Syracuse that it was Couser who directed Stanback to round up confederates to go to Syracuse to carry out the plan.
 

 Eventually, the gang witness was incarcerated in the same jail as Couser. The witness testified before the Grand Jury that
 
 *635
 
 Couser asked him about the details of the trip to Syracuse. Defendant Couser was upset that the material witness had not been killed because, after the botched attack, no one would be able to find him to kill him. Defendant told the Grand Jury witness that if anybody in the jail asked if Stanback performed the murders for defendant, “say hell no.”
 

 After defendant was indicted for the murder of the relative of the material witness, the People did not file a notice of intent to seek the death penalty within the time prescribed by statute. The death penalty is therefore no longer a part of this case, nor can it be.
 

 County Court dismissed the second count of the indictment, finding that the definition of the term “command” is speculative and, therefore, violated Eighth Amendment constitutional standards. The Appellate Division reversed, declined to apply an Eighth Amendment analysis, found that the term “command” has a commonly understood meaning that meets standard due process (14th Amendment) strictures, found sufficient circumstantial evidence of a “command” by Couser, reinstated the second count of the indictment, and remitted for further proceedings. A Judge of this Court granted leave to appeal, and we now affirm the Appellate Division order.
 

 Penal Law § 125.27 defines “murder in the first degree.” The definition typically requires that, with the intent to cause the death of another, a person actually causes a death; it then adds that this type of murder is elevated to first degree rank when one of several aggravating factors is involved. The presence of one of these aggravating factors also permits a jury to recommend a death sentence upon a conviction of murder in the first degree (CPL 400.27 [1]).
 

 Analysis of defendant’s criminal responsibility for first degree murder relevant to this case and controversy starts with the accomplice liability provision (Penal Law § 125.27 [1] [a] [vii];
 
 cf.,
 
 Penal Law § 125.25 [3];
 
 see also,
 
 Penal Law § 20.00). A defendant’s criminal responsibility for murder in the first degree can be based upon the conduct of another when that defendant
 
 “commanded
 
 another person to cause the death of the victim or intended victim pursuant to section 20.00 of this chapter” (Penal Law § 125.27 [1] [a] [vii] [emphasis added]).
 

 Section 20.00 contains the well-established definition of “[cjriminal liability for conduct of another,” which may occur when a defendant “solicits, requests, commands, importunes, or intentionally aids [another] person to engage in [criminal]
 
 *636
 
 conduct” (Penal Law § 20.00). The current accomplice version has roots at least as far back as the 1907 Penal Code, which defined the “principal” (as contrasted to “accessory”) to a crime as including “a person who directly or indirectly counsels, commands, induces or procures another to commit a crime” (Penal Code of 1907 § 29).
 

 Defendant asserts that the term “commanded,” as transposed over into Penal Law § 125.27 is unconstitutionally vague. Defendant urges that because the aggravating factors that trigger New York’s death penalty are the same aggravating factors that delineate murder in the first degree, the statutory aggravating factors must be tested through the sharper prism of the Eighth Amendment. As an alternative and fallback, he urges that the provision under which he is accused and subject only up to a maximum sentence of life imprisonment is rendered vague even under a standard due process (14th Amendment) analysis because there is no commonly understood meaning of the word “command.”
 

 The People respond that because defendant has not yet been convicted of anything and cannot be exposed to a death sentence in this case, he has no standing to present an Eighth Amendment challenge; moreover, the People claim that he has not preserved that claim. The People also argue that under either standard 14th Amendment due process scrutiny or the Eighth Amendment approach, the word “command” is not unconstitutionally vague because it has a commonly understood meaning.
 

 As to the standing issue, we note that it does not entirely deprive defendant of his opportunity to challenge the constitutionality of the statute, because defendant clearly has standing to make a standard due process vagueness assertion.
 

 As a commonly understood term, the word “commanded” does not suffer from vagueness (see,
 
 People v Foley,
 
 94 NY2d 668, 681 [language is not impermissibly vague if it “ ‘ “conveys sufficiently definite warning as to the proscribed conduct when measured by
 
 common understanding
 
 and practices” ’ ” (emphasis added)];
 
 cf., Tuilaepa v California,
 
 512 US 967, 973-974 [a death penalty aggravating factor must have some “
 
 ‘common-sense core of meaning
 
 * * * that criminal juries should be capable of understanding’ ” (emphasis added, citation omitted)]).
 

 We are persuaded that, under a standard due process appraisal, the commonly accepted meaning of “command” for
 
 *637
 
 ordinary legal and constitutional purposes is “to direct authoritatively”
 
 (see, People v Couser,
 
 258 AD2d 74, 80-81;
 
 People v Mateo,
 
 175 Misc 2d 192, 221,
 
 affd on other grounds
 
 249 AD2d 894,
 
 affd
 
 93 NY2d 327;
 
 see also,
 
 Black’s Law Dictionary 262 [7th ed 1999]). It is also significant that a “command” is the only type of accomplice liability activity for which a confederate can become liable for murder in the first degree. This selective precision manifests the Legislature’s confidence and understanding that the word “command” is a distinctive term that is different from “solicits,” “requests,” or “importunes”
 
 (see,
 
 Mem of Assembly Codes Comm, 1995 NY Legis Ann, at 2).
 

 Further, there has been virtually no judicial churning concerning the term “command,” despite its longevity in New York jurisprudence. Evidently, parsed interpretation of this ordinary word has not been deemed necessary. Indeed, it is notable that the term “commands” was retained throughout the development of the accomplice liability statute, while other terms have been recast. “Command” very likely did not have to be changed because it consistently “ ‘ “conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices” ’ ”
 
 (People v Foley, supra,
 
 at 681 [citations omitted]).
 

 If we were to assume that the plain word “command” needs refined legal peeling and probing, an early case of this Court offers some helpful insight concerning the well-rooted etymology and understanding of the term, as it evolved in the accessorial liability context of the Penal Code of 1907. In
 
 People v Farmer,
 
 this Court had to examine whether a homicide committed by a woman was performed “by [her husband’s] procurement, counsel or command”
 
 (People v Farmer,
 
 196 NY 65, 73 [1909]). The Court noted that the man was “of moderate intellect”
 
 (id.,
 
 at 74). However, the wife was a strong woman, the “ruling power” who “to a large extent controlled” her husband’s actions
 
 (id.).
 
 Apart from this descriptive characterization — for whatever it may be worth in legal application, then or now — the Court stated, “[i]t is possible that he
 
 counseled, advised
 
 and
 
 procured
 
 her to do the act”
 
 (id.,
 
 at 75 [emphasis added]); “commanded” was not an option in the Court’s calculus. The concept had a distinctive, clearly understood meaning — and still does.
 

 Defendant argues further that even if the term “command” is sufficiently definite to support his prosecution under the pertinent count of the indictment, there was insufficient proof before the Grand Jury that Couser commanded
 
 *638
 
 Stanback to kill people in Syracuse. The People respond that the evidence presented to the Grand Jury was legally sufficient to support this count of the indictment. We are satisfied on our review of the record that the People’s position is right. Thus, we agree with the Appellate Division that, under standard Grand Jury evidence review, sufficient evidence was adduced
 
 (see, People v Geraci,
 
 85 NY2d 359, 371).
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed.